Herskovitz *v*. Vespico, Appellant.

Argued December 8, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Robert J. Scovell,* with him *Mack and Meyer,* for appellant.

*Herbert L. Winkler,* with him *Patrick J. Toole,* and *Peter B. Broida,* for appellee.

OPINION BY WATKINS, P.J., March 29, 1976:

This is an appeal from the entry of summary judgment by the Court of Common Pleas of Luzerne County, by the appellant, Vincent Vespico, also known as Vincent Vespico, Sr.

The relevant facts are admitted by the pleadings. The appellee sold to the appellant and his wife property known as 18 Public Square, Wilkes-Barre, Luzerne County, Pennsylvania, on December 4, 1968, properly recorded. Title vested in appellant as surviving tenant by the entireties. The sale was made for a consideration of $30,000. The sale was subject to an agreement dated the same date as the deed, December 4, 1968, and was made part of the complaint. The following part of this agreement pertinent to this appeal reads as follows:

"That in the event of a resale by the Buyers or either of them, of property located at 18 Public Square,

Wilkes-Barre, Luzerne County, Pennsylvania, within a period of five (5) years from the date of Deed from Florence Herskovitz, Executrix of the Estate of Ernest Herskovitz, Deceased, to Vincent Vespico, Sr., et ux, that is, until December 4, 1973, for a sum in excess of Thirty Five Thousand Dollars ($35,000.00), the Buyers agree to divide and share equally with the Seller the sum realized in excess of Thirty Five Thousand Dollars ($35,000,00), after deduction of all real estate transfer taxes incurred by the Buyer."

The Redevelopment Authority of the City of Wilkes-Barre, by an action instituted July 6, 1973, against the appellant and his wife, now deceased, attempted to acquire the property in question by way of eminent domain proceedings. The appellant also admitted that he received $64,000 from the Redevelopment Authority. Paragraphs 11 through 14 of the amended complaint allege a sale by the appellant to the Redevelopment Authority of the property in question by a deed dated October 9, 1973 for and in consideration of $64,000; that the consideration was $29,000 in excess of the $35,000; and that the appellant has refused to pay $14,500 in violation of the agreement hereinbefore set forth.

The appellant admits the receipt of the $64,000; however, appellant made general denial that there was a sale to the Redevelopment Authority and that the transfer was not in violation of the agreement.

It is well established that in a ruling on a motion for summary judgment the record must be viewed in the light most favorable to the non-moving party and all doubts as to the existence of a general issue of fact must be resolved against the moving party. *Davis v. Pennzoil Co.*, 438 Pa. 194, 264 A.2d 597 (1970). Furthermore, in considering admitted facts pursuant to Pa. R.C.P. 1029, the court may consider averments answered by general denials as admissions. *Fayette Bank and Trust Co. v. Hradesky*, 37 Fayette L.J. 50 (1974).

A careful examination of the pleadings and depositions leaves no question of fact as to the conveyance by the appellant to the Redevelopment Authority. Similarly, there is no question of fact in dispute that the conveyance occurred within the five-year period set forth in the agreement.

The appellant contends in his brief that there is a material question of fact as to the effect of the agreement. However, appellant failed to raise this question by way of new matter or affidavit as set forth in Pa. R.C.P. 1035(d). In such a posture we cannot consider alleged issues that are not plainly disclosed as genuine issues in the lower court. Since we are here dealing with admissions and documentary evidence, we are outside of the restrictions of *Nanty-Glo Boro v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932), insofar as proof does not depend upon oral testimony which would be in the province of a jury determination. *Rivoli Theatre Company, Inc. v. Allison,* 396 Pa. 343, 152 A.2d 449 (1959). "Defendant's basic admissions left no issue for the jury to resolve, and there is no authority known to us that requires such an admission to run the gantlet in the jury room. It has, rather, the effect of an unintentional but still unconditional surrender." *Id.* at p. 346. Consequently, the only question remaining is one of law and that is whether the conveyance of the premises to the Redevelopment Authority constituted a resale under the agreement. It should be pointed out that there was an agreement between the appellant and the Redevelopment Authority and a deed of conveyance was made and the consideration received by agreement of the parties without any proceeding by the Board of Viewers or a jury trial or a final decree in the eminent domain proceedings. However, it may well be argued that the institution of the eminent domain proceedings was a pressure that brought about the sale.

The word "sale" comprehends (1) a transfer from one party to another and (2) a valuable recompense. *Whiteman & Co. v. Fidei,* 176 Pa. Superior Ct. 142, 145, 106 A.2d 644, 645-646 (1954). Although there is a scarcity of cases in Pennsylvania on the point here in question, our courts have consistently held that forced judicial sales such as sheriffs' sales are "sales" within the above meaning. *Potter v. Langstrath, Lukens's Appeal,* 151 Pa. 216 (1892) ; *Marx Realty and Improvement Co., Inc. v. Boulevard Center, Inc.,* 398 Pa. 1, 156 A.2d 827 (1959). In the case of *United States v. Certain Parcels of Land in Loyalsock Twp., Lycoming County, Pa., et al.,* 51 F. Supp. 811 (M.D. Pa. 1943), the United States filed a petition for condemnation and a declaration of taking of the property and then settled with the fee owner. The lessee of the premises in question contested the settlement and the termination of his leasehold. The court, however, ruled that the transaction was a sale which allowed the lessor the right of entry. The court stated at 812: "Consequently, the present facts reveal a situation wherein the lessor reserved the right to enter and take possession of the leased premises where sales were effected pursuant to a proposed housing development and the United States purchased the land for the purpose of a housing development. The lessee, Peeling, contends that the method of purchase, i.e., condemnation, is not a sale within the meaning of the pertinent provision of the lease. This contention is clearly without merit. The United States purchased the property through an appropriate statutory method and, although such fact is perhaps not material, for purposes within the contemplation of the provisions of the lease. Consequently, the transaction partakes of all the incidents of a 'sale', as that term is used. It is true that the transaction is an involuntary sale of the property, but it is a sale nonetheless. American Creameries Co. v. Armour & Co., 149 Wash. 690, 271 P. 896; Vandermulen v. Vandermulen, 108 N.Y. 195, 15 N.E. 383."

In other jurisdictions it has been uniformly held that condemnation sales and other sales pursuant to eminent domain are "sales" although involuntary. In *Jackson v. State,* 213 N.Y. 34, 106 N.E. 758 (1914), Justice CARDOZO stated: "'Condemnation' is an enforced sale, and the state stands toward the owner as buyer toward seller." In the case of *American Creameries Co. v. Armour and Co.,* 149 Wash. 690, 271 P. 896 (1928), the court upheld the lower court's determination that property acquired by the City of Seattle pursuant to condemnation proceedings was acquired by a "sale" which allowed termination of a lease agreement pursuant to a reservation in that lease.

We hold that the sale of the property located at 18 Public Square, Wilkes-Barre, by the appellant to the Redevelopment Authority of the City of Wilkes-Barre, was a "sale" within the meaning of the contract entered into on December 4, 1968 and hereinabove set forth.

Finally, we must concur with the lower court's determination that the term "sum realized" is in fact distinct from "net profits realized". Close scrutiny of the copy of the agreement as attached to the appellee's complaint reveals that "net profits" was originally typed; however, it was crossed out and the word "sum" added above the deletion. Prior to this appeal the appellant has not raised in answer or new matter any question as to the effect a primary agreement had on the supplemental agreement which is the subject of this action. While the net profit actually realized by the appellant in the transaction was approximately $16,000, the "sum realized" actually was $29,000 in excess of $35,000. Consequently, the appellee, pursuant to the agreement, was entitled to $14,500 which was correctly entered as judgment by the court below.

Summary judgment affirmed.