## Kohn v. Shegda

*Eugene John Lewis*, and *Sidney Ginsberg*, for plaintiff.

*Raymond J. Quaglia, Sidney E. Herold*, and *Joseph D. Golden*, for defendant.

SPORKIN, *J.*, February 16, 1978—This matter had its genesis in a complaint in equity instituted by plaintiff, Sam Kohn, requesting that this court order defendant, George Shegda, to specifically perform a written agreement, dated December 27, 1976, purporting to grant an option from defendant to plaintiff for the purchase of premises 2005-2031 North American Street, Philadelphia, Pa. (hereinafter "the subject premises").

Following initiation of this matter, a rule was granted upon defendant to show cause why a preliminary injunction should not issue. After consideration of the rule, this court entered a preliminary injunction by agreement of counsel enjoining defendant from conveying or transferring title to said real estate.

Thereafter, defendant moved for judgment on the pleadings, attacking the legal validity of the written option agreement and its sufficiency pursuant to the Pennsylvania Statute of Frauds.[1] The said motion was denied and this matter then came before us for final hearing. Upon consideration of the pleadings, of the record before us, and of the applicable law, we find that an enforceable option existed in favor of plaintiff to purchase the subject premises, which option was properly exercised by plaintiff; and that defendant wrongfully failed and refused to convey the subject premises to plaintiff, thus rendering defendant subject to a decree of equitable and monetary relief in favor of plaintiff.

From the pleadings, the admissions contained therein, the evidence adduced before us, and the written exhibits offered in evidence, we make the following

---

1. Act of March 21, 1772, 1 Sm. L. 389, sec.1, 33 P.S. §1.

## FINDINGS OF FACT

1. Plaintiff, Sam Kohn, and defendant, George Shegda, are adult citizens and residents of the City and County of Philadelphia, Commonwealth of Pennsylvania.

2. At all times relevant hereto, defendant has been the owner of premises 2005-2031 (inclusive) North American Street, Philadelphia, Pa.,with the buildings and improvements erected thereon ("the subject premises").

3. Plaintiff is engaged in the wholesale meat business and at all times relevant hereto has been the owner of premises 2001-2003 North American Street, Philadelphia, Pa., which adjoin the subject premises.

4. On May 14, 1976, plaintiff and defendant entered into a written option agreement ("the original option agreement") for the purchase by plaintiff from defendant of the subject premises for the sum of $80,000 and pursuant to the terms of which buyer (plaintiff) was to exercise said option within 60 days from the date thereof; the consideration for grant of such option to purchase was the sum of $1,000, to be paid by plaintiff to defendant. (Exhibit P-1).

5. Plaintiff accordingly paid said $1,000 to defendant; plaintiff was unable to exercise said option within the required 60 day period, however, because he was unable to secure bank financing for the actual purchase.

6. Subsequent to the expiration of the original option agreement defendant agreed orally to extend that agreement until such time as the plaintiff could secure appropriate bank financing.

7. In the early part of December, 1976, plaintiff

informed defendant that plaintiff's lender (Continental Bank) was willing to grant plaintiff a loan to enable him to purchase the subject premises, *provided* that plaintiff could get zoning board of adjustment approval for the use of said premises as a slaughterhouse or abbatoir.

8. On or about December 27, 1976, plaintiff had his sister, Barbara Kohn, deliver to defendant a written extension option agreement dated December 14, 1976, at defendant's home, extending the original option agreement.

9. On December 27, 1976, defendant refused to execute said written extension of the original option agreement but, instead, on his stationery prepared a written option agreement granting plaintiff an option, for a consideration of $100 to purchase premises 2005-2031 North American Street, Philadelphia, Pa. at a price of $80,000. (Exhibit P-4) ("the later option agreement.")

10. On December 28, 1976, at plaintiff's place of business the said later option agreement was executed by plaintiff and defendant and the $100 consideration for the option rights was paid to defendant by plaintiff.

11. Unfortunately, the later option agreement, drafted by defendant, contained ambiguous language as to what events would trigger termination of, or settlement thereunder; specifically, it provided only that it would *expire*, "at the approval *or* disapproval of zoning." (Emphasis supplied.)

12. In light of the record herein, we construe such language simply to have provided that settlement under the later option agreement would be contingent upon receipt by plaintiff of zoning approval; plaintiff was to apply to the zoning board of adjustment to secure approval for the use of the

said optioned property as an abbatoir and plaintiff would have a reasonable time within which to exercise said option upon plaintiff's securing the requested zoning, but if the application were denied the option would terminate.

13. Pursuant to the terms of said later option agreement, on March 16, 1977, with the full knowledge and consent of defendant, plaintiff applied to the zoning board of adjustment for the requested change. (Exhibit P-7.)

14. Plaintiff retained special "zoning counsel" and expended in excess of $10,000 on counsel and architectural fees, to secure the requested zoning change.

15. On May 5, 1977, the Zoning Board of Adjustment of the City of Philadelphia granted plaintiff a variance for use of the subject premises as an abbatoir and on May 9, 1977, issued its Permit, No. 248262, to plaintiff for said use. (Exhibits P-8-9.)

16. On or about May 9, 1977, plaintiff informed defendant of the approval by the zoning board and exercised his option to purchase the said premises for the sum of $80,000, upon which notification defendant indicated his approval and advised plaintiff to have plaintiff's attorney schedule settlement.

17. Shortly after defendant was notified by plaintiff of the approval by the zoning board of the requested change and the exercise by the plaintiff of the option to purchase the said properties, defendant along with all other businessmen in said area received a letter from the Mayor of Philadelphia inviting him to a meeting in the Mayor's Office on May 19, 1977, at which meeting defendant along with the other businessmen present was advised of the intention of the City of Philadelphia to spend

considerable sums of money for the future development of the American Street Industrial area, as a result of which the properties in question substantially increased in value.

18. On June 13, 1977, defendant was advised in writing by certified mail, return receipt requested, by plaintiff's counsel that: "As you have already been put on notice that we received approval from the zoning board and that you have been advised by Sam Kohn that he is ready and prepared to exercise the option to purchase the aforementioned properties, I have this day ordered title insurance and we are prepared to make settlement on or before 60 days from the date of this letter" which letter was received by defendant on June 15, 1977, according to the return receipt card signed by him. (Exhibit P-10.)

19. Subsequent to the receipt of said letter, defendant failed to communicate with either plaintiff or his counsel despite several efforts made by plaintiff's counsel to talk to defendant by telephone.

20. On July 1, 1977, counsel for plaintiff forwarded to defendant by certified mail, return receipt requested, and defendant received a letter enclosing a copy of the title report and advising defendant that a time and place for settlement would be scheduled by plaintiff in the absence of word from defendant. (Exhibits P-11 and 14.)

21. Subsequent to receipt of said letter of July 1, 1977, defendant failed to communicate with either plaintiff or plaintiff's counsel.

22. On July 8, 1977, counsel for plaintiff sent notice to defendant by certified mail, return receipt requested (which notice was received by defendant) setting forth the time and place of settlement. (Exhibit P-12.)

23. Plaintiff appeared at the time and place set forth for settlement (August 1, 1977 at 10:00 a.m. at the office of the Commonwealth Land Title Insurance Company, 1510 Walnut Street, Philadelphia, Pa.) and duly presented to the title insurance company's representative a certified check for the purchase price of the said properties (Exhibit P-5) together with a proposed deed for the conveyance of the subject premises by defendant to plaintiff and a check to cover all other charges and expenses incident to the said purchase. (Exhibit P-5.)

24. Defendant did not appear at the aforesaid time and place fixed for settlement, did not execute the said deed, did not execute the settlement sheet prepared by the title insurance company (Exhibit P-6) and has failed and refused to convey the said properties to plaintiff in accordance with the later option agreement.

25. Since August 1, 1977, defendant has received net rental income from the subject premises, in excess of $1,200 per month.

26. Defendant breached his written option agreement. Defendant is liable to plaintiff for all rents received by defendant subsequent to August 1, 1977, and continuing to the date of conveyance of the optioned properties by defendant to plaintiff.[2]

## DISCUSSION

The foregoing findings of fact are plainly mandated by the evidence that has been produced in this case. The record discloses that virtually all of

2. Since the conclusions expressed in this paragraph respond to mixed questions of law and fact, they are presented here, as findings of fact, and again, infra, as conclusions of law.

the testimony of plaintiff and his witnesses as well as all of plaintiff's exhibits were received in evidence without objection by defendant. Additionally, virtually all of the averments contained in paragraphs 1 through 5 of plaintiff's complaint were received in evidence by us either as a result of defendant's specific admissions or as a result of defendant's failure to specifically deny said averments in accordance with Pa.R.C.P. 1029(b). See: Willinger v. Mercy Catholic Medical Center, 241 Pa. Superior Ct. 456, 462, 362 A. 2d 280 (1976); Herskovitz v. Vespico, 238 Pa. Superior Ct. 529, 362 A. 2d 394 (1976). Further, as is indicated by the nature of our findings, we believe that the evidence adduced by plaintiff was superior, both in its weight and in its credibility.

At the locus of this controversy is the contention of defendant that this later option agreement was either invalid, or that it became terminated upon approval by the zoning board of plaintiff's application. With this argument, however, we cannot agree. See: Ladner on Conveyancing in Pennsylvania, §5.02 pp. 84-87 (3d ed.).

The written option agreement in evidence as plaintiff's Exhibit #4 was to expire "at the approval or disapproval of zoning."

Upon reflection and upon analysis of the clause in question we find that the language used by the parties was such as to invite parol evidence to explain it. If the parties meant for the agreement itself to become *void* in the event of *any* action by the zoning board, they could simply have said so; but they did not. Does the stated expiration of the *option* "at the approval or disapproval of the zoning" mean, alternatively, that upon *disapproval* of zoning the option and agreement would become null

and void, but upon *approval* of zoning the option would expire and be converted into a binding obligation to make settlement within a reasonable time at the agreed purchase price?

In such circumstances parol evidence is entirely admissible as a tool of construction: Celley v. Mutual Benefit Health and Acc. Ass'n., 229 Pa. Superior Ct. 475, 324 A. 2d 430 (1974); Miller v. Commercial Elec. Const. Inc., 223 Pa. Superior Ct. 216, 222, 297 A. 2d 487 (1972). Such testimony in the present case, which includes *subsequent* as well as prior and contemporaneous statements, convinces us that the parties mistakenly agreed to the language in question, assuming same to accomplish the latter of the two interpretations above. They intended the later agreement to convey an option, contingent upon zoning approval. Any other interpretation would render the date chosen—that of action by the board—as a meaningless one to which the rights of the parties would be pegged.

It is significant to note that plaintiff testified that by the use of the term "at the approval or disapproval of zoning" in the said option agreement (plaintiff's Exhibit #4), plaintiff and defendant specifically and expressly agreed and understood prior to the execution of said written option, contemporaneously therewith as well as subsequent thereto that plaintiff was to apply to the zoning board of adjustment to secure approval for the use of the said optioned property as an abbatoir and that plaintiff would have a reasonable time within which to exercise said option upon plaintiff's securing the requested zoning.

Even more significant, perhaps, is the fact that when that testimony was not objected to by defend-

ant or his counsel, any possible objection thereto was waived. It is, of course, well settled law that an objection must be made as soon as the question is posed and before an answer is given: Evans v. Otis Elevator Co., 403 Pa. 13, 26-27, 168 A. 2d 573, 579-580 (1961). Furthermore, we note that where what might otherwise conceivably be inadmissible evidence, including hearsay, is admitted without objection and is relevant and material to the fact in issue, it must be given its natural and probative effect as if it were in law admissible: Anderson v. Hughes, 417 Pa. 87, 92, 208 A. 2d 789, 792 (1965); Com.v. Ehly, 457 Pa. 225, 319 A. 2d 167 (1974); Poluski v. Glen Alden Coal Co., 286 Pa. 473, 476, 133 Atl. 819, 820 (1926).

The admission of testimony as to the understandings of the parties concerning the quoted language of the later option agreement was, in our opinion, properly received, and this conclusion is particularly correct where, as here, defendant failed to object. (Furthermore, defendant cannot at this date assert that said error was fundamental error to which no objection need be made. This is because on October 16, 1974, the Supreme Court of Pennsylvania ruled that it would no longer recognize the basic and fundamental error rule and that all errors to which objection is not made are waived: Com.v. Clair, 458 Pa. 418, 326 A. 2d 272 (1974); Com.v. Williams, 458 Pa. 319, 326 A. 2d 300 (1974); Dilliplaine v. Lehigh Valley Trust Co., 457 Pa. 255, 322 A. 2d 114 (1974).)

The option agreement herein prepared by defendant must be construed against defendant as its maker to resolve any ambiguity in meaning: Consolidated Tile & Slate Co. v. Fox, 410 Pa. 336, 189 A. 2d 228 (1963). Parol evidence was admitted

without objection by defendant as to the meaning of the option agreement in question and defendant cannot at this late date raise this issue as a result of his failure to object to said evidence during the course of the trial.

Accordingly, we make the following

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter and the parties to this suit.

2. On December 27, 1976, plaintiff and defendant entered into a valid and enforceable option agreement for the purchase of premises 2005-2031 North American Street, Philadelphia, Pa. (the subject premises) for the sum of $80,000 by plaintiff from defendant contingent upon approval by the Zoning Board of Adjustment of the City of Philadelphia of a zoning change for use of said premises as an abbatoir.

3. Parol evidence is properly admitted where prior, contemporaneous and subsequent statements of the parties are offered to aid in construction of an ambiguous provision in a contract, or to show that the precise language as contained in the agreement was the result of a mutual mistake by the parties, particularly where no objection was interposed at the time such testimony was offered.

4. By the exercise of his option, plaintiff became, in effect, the equitable owner of the subject premises as of the date set for settlement, August 1, 1977.

5. At all times relevant hereto, plaintiff made every reasonable effort to complete settlement but said completion was thwarted by defendant's breach of contract to convey said properties to plaintiff.

6. Plaintiff at all times herein has acted in good faith and in compliance with the terms of the written option agreement entered into between plaintiff and defendant.

7. Defendant in bad faith breached his written contract with plaintiff entitling plaintiff to damages equal to the rents received by defendant since August 1, 1977 (the date of the scheduled settlement) amounting to $1,200 per month from said date to the date of conveyance by defendant to plaintiff of the subject premises.

8. Plaintiff is entitled to specific performance of his agreement with defendant for the conveyance of the subject premises 2005-2031 North American Street, Philadelphia, Pa., from defendant to plaintiff.

In accordance with the foregoing, we enter the following

## DECREE NISI

And now, February 16, 1978, upon hearing and consideration of the above cause, it is ordered, adjudged and decreed as follows:

1. That defendant is ordered and directed within 30 days from the entry of the final decree herein to appear at the offices of the Commonwealth Land Title Insurance Company, 1510 Walnut Street, Philadelphia, Pa. and complete settlement for the purchase of premises 2005-2031 (inclusive) North American Street, Philadelphia, Pa. by plaintiff Sam Kohn, from defendant, George Shegda, for the gross consideration of $80,000 less all appropriate title insurance charges normally imposed on the seller, 1 percent transfer tax, the sum found to have been received by defendant as rent for the subject

premises from August 1, 1977, and continuing to the date of settlement and which sum is to be credited to the buyer, Sam Kohn, and less the amounts required to satisfy any liens, judgment and restrictions on the title required to give the buyer good and marketable title as will be insured by said title insurance company, with taxes (other than transfer tax), water and sewer charges to be apportioned as of August 1, 1977.

2. That defendant at said settlement shall execute and deliver to plaintiff a fee simple special warranty deed transferring title to the subject premises to plaintiff.

3. In the event defendant shall fail to appear and complete settlement and convey the properties referred to herein within the time limits prescribed herein, then in such event, Peter I. Daniele, Esq. is appointed trustee for defendant, George Shegda, and is directed to convey unto plaintiff all of defendant's right, title and interest in and to the real estate hereinbefore described and complete settlement on behalf of defendant and the net proceeds shall be payable into the office of the prothonotary until further order of this court.

4. The prothonotary will enter this decree nisi and give notice thereof to the parties or their attorneys, and unless exceptions thereto are filed within 20 days, this decree nisi shall be entered on praecipe as the final decree of the court. Costs to be borne by the parties as respectively incurred.