J-S76017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JESSICA L. BAUSCH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN S. GREEN | |
| Appellant | No. 1835 EDA 2017 |

Appeal from the Order Entered May 12, 2017
In the Court of Common Pleas of Delaware County
Civil Division at No: 2014-002411

| | |
|---|---|
| JESSICA L. BAUSCH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN S. GREEN | |
| Appellant | No. 2228 EDA 2017 |

Appeal from the Judgment Entered June 22, 2017
In the Court of Common Pleas of Delaware County
Civil Division at No: 2014-002411

BEFORE:  PANELLA, STABILE, and PLATT,* JJ.

MEMORANDUM BY STABILE, J.:                   **FILED MARCH 27, 2018**

---

* Retired Senior Judge assigned to the Superior Court.

Appellant, John S. Green, appeals at docket number 1835 EDA 2017 from an order entered May 12, 2017. He also appeals at docket number 2228 EDA 2017 from the Judgment entered on June 22, 2017[1] in favor of Appellee, Jessica L. Bausch. We affirm at docket number 1835 and quash the appeal at docket number 2228 as untimely.

The trial court recited the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> [Appellee] and [Appellant] were married on February 15, 1997 and were granted a divorce in Delaware County, Pennsylvania, on December 28, 2005. Incorporated by reference but not merged within the parties' divorce decree is a Property Settlement Agreement [("PSA")] signed by each of the parties and dated February 26, 2003. In the [PSA], each party agreed this Court "… shall retain continuing jurisdiction over the parties and the subject matter of the [PSA] for the purpose of enforcement of any provisions thereof."
>
> Together with a writing partner, Appellant co-authored a motion picture script which they titled: OLYMPUS IS FALLEN ("the Script"). During the period of their collaboration, Appellant and his writing partner, in addition to OLYMPUS IS FALLEN, collaborated on a number of other writing projects. Appellant and the writing partner terminated their business relationship and parted ways some years ago prior to 2013. After their business and artistic collaboration ended, and without the knowledge of Appellant, his former writing partner marketed and sold the Script.

---

[1] Appellant purported to appeal from the June 12, 2017 order denying his post-verdict motions. The June 12, 2017 order was interlocutory, and we will therefore treat the appeal at docket number 2228 as an appeal from the June 22, 2017 judgment. **See Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511 (Pa. Super. 1995). For reasons we explain in the main text, Appellant's post-verdict motions were procedurally inappropriate in this case.

By 2013, Appellant discovered the Script is the basis for the major motion picture OLYMPUS HAS FALLEN [(Millennium Films 2013)], and he was a party in California civil litigation [(the "California Litigation")] to determine, among other issues, the proper holder of the authorship rights in the Script and money damages, if any, owing to Appellant, or potentially from Appellant to his former writing partner, or anyone else. On or before July 8, 2013, Appellant, his former writing partner and other intentionally unnamed persons negotiated and signed a Confidential Settlement Agreement and Mutual Release ("the Agreement and Release").

Trial Court Opinion, 8/1/2017, at 1-2.

The parties addressed the Script in their PSA:

In the event that [Appellant] receives any monies or other proceeds from the sale of that certain motion picture script entitled [sic] OLYMPUS IS FALLEN (the "Olympus Proceeds"), husband shall promptly pay one-half of the Olympus Proceeds to [Appellee].

PSA at ¶ 13.[2]

Appellant received $175,000.00 pursuant to the Agreement and Release. On January 3, 2014, Appellee sued Appellant for breach of the PSA. The parties proceeded through a contentious discovery phase, owing to the confidentiality of the Agreement and Release, and a non-jury trial took place on March 30, 2017 and May 5, 2017. The trial court filed its findings of fact, conclusions of law, and decision on May 12, 2017. The trial court divided the $175,000.00 in half ($87,500.00) and subtracted half of Appellant's expenses from the California Litigation ($35,135.21) to arrive at an award in Appellee's favor of $52,364.79. Appellant filed post-trial motions on May 22, 2017. At

_____

[2] The PSA appears in the record as Exhibit A to Appellees' January 3, 2014 complaint. We will cite the PSA by paragraph number in the main text.

docket number 1835, while his post-trial motions were still pending, Appellant filed a timely notice of appeal from the trial court's May 12, 2017 decision. On June 12, 2017, the trial court denied Appellant's post-trial motions. The trial court's decision was reduced to judgment on June 22, 2017. At docket number 2228, Appellant filed a timely appeal from the entry of judgment.

The PSA, at paragraph 4, provided that the trial court that entered the divorce decree would have continuing jurisdiction over any dispute arising out of the PSA. PSA at ¶ 4. Rule 1920.52 of the Pennsylvania Rules of Civil Procedure provides that no post-trial relief shall be filed in a claim involving marital property or enforcement of marital agreements. Pa.R.C.P. No. 1920.52(1), (2). Similarly, Rule 1930.2 abolishes post-trial practice in domestic relations matters, instead requiring motions for reconsideration pursuant to Pa.R.A.P. 1701(b)(3). Pa.R.C.P. No. 1930.2(a), (b). If the trial court does not grant reconsideration within the thirty-day appeal period, the aggrieved party must file a notice of appeal within thirty days of the trial court's decision. Pa.R.C.P. No. 1930.2(b). Appellant concedes the applicability of Rules 1920.52 and 1930.2.

We observe that Rule 1920.52 contemplates entry by the trial court of a decree that is final and immediately appealable. We further observe that, in this case, despite the parties' agreement that the court that entered the divorce decree would have continuing jurisdiction, the Delaware County Court of Common Pleas processed this matter in its civil division and treated its original decision as a non-jury verdict that was subsequently reduced to

judgment. We conclude that these procedural irregularities do not implicate our jurisdiction. Assuming Rules 1920.52 and 1930.2 govern this matter, Appellant was required to file an appeal or seek and receive reconsideration within thirty days of the trial court's May 12, 2017 decision. At docket number 1835, Appellant filed a timely notice of appeal on June 9, 2017. In so doing, he preserved this Court's jurisdiction. The post-trial motions and subsequent appeal from the judgment were nullities, because Rules 1920.52 and 1930.2 abolish post-trial practice in domestic relations matters. We therefore quash the appeal at docket number 2228.[3]

We now turn to the merits. Appellant presents a single question for our review:

> Whether the trial court erred in its approach to contract construction and interpretation regarding the parties' [PSA] when it found that Appellant's lawsuit settlement proceeds were subject to [Paragraph] 13 of the parties' [PSA]?

Appellant's Brief at 5.

Our standard of review of this nonjury proceeding is to determine whether the trial court's May 12, 2017 findings of fact are supported by competent evidence and whether the court committed any error in its conclusions of law. *Stonehenge Square Ltd. P'ship v. Movie Merchants, Inc.*, 685 A.2d 1019, 1022 (Pa. Super. 1996). Here, Appellant challenges the

---

[3] Proceeding at docket number 1835 and quashing at docket number 2228 is a distinction without a difference in this case. The appeals present identical substantive issues.

trial court's construction of the PSA, pursuant to which Appellant and Appellee were to split the proceeds of a sale of the Script. "When a contract is clear and unequivocal, its meaning must be determined by its contents alone." **N.E.A. Cross, Inc. Nat'l Fuel Gas Supply Corp.**, 600 A.2d 228, 229 (Pa. Super. 1991), **appeal denied**, 608 A.2d 31 (Pa. 1992).

> The paramount goal of contractual interpretation is to ascertain and give effect to the intent of the parties. In determining the intent of parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly.

**Id.** (quoting **PBS Coals, Inc. v. Burnham Coal Co.**, 558 A.2d 562 (Pa. Super. 1989), **appeal denied**, 568 A.2d 1248 (Pa. 1989)). Further, "a contract must be interpreted to give effect to all of its provisions." **Commonwealth ex rel. Kane v. UPMC**, 129 A.3d 441, 464 (Pa. 2015). "[A] property settlement agreement between husband and wife will be enforced by the courts in accordance with the same rules of law applying to determining the validity of contracts generally." **Kleintop v. Kleintop**, 436 A.2d 223, 225 (Pa. Super. 1981).

As noted above, the PSA provides that if Appellant "receives any monies or other proceeds from the sale of [the Script], [Appellant] shall promptly pay one-half of [the proceeds] to [Appellee]." PSA, at ¶ 13. The PSA further provides that assets not specifically mentioned therein, which are in the sole possession of one of the parties, are not subject to the PSA's terms. **Id.** at ¶ 9.

Appellant argues that no sale occurred, and that the proceeds of his Agreement and Release stemming from his lawsuit against his former writing partner did not constitute proceeds from the "sale" of the Script, as contemplated in the PSA. Appellant cites *Herskovitz v. Vespico*, 362 A.2d 394 (Pa. Super. 1976), in which this Court held that a sale includes "(1) a transfer from one party to another and (2) valuable recompense." *Id.* at 396. Appellant also relies on § 3501 of the Domestic Relations Code, which provides that marital property does not include "[a]ny payment received as a result of an award or settlement for any cause of action or claim which accrued prior to the marriage or after the date of final separation regardless of when the payment was received." 23 Pa.C.S.A. § 3501(a)(8). In essence, Appellant argues that the script was sold by a third party, that the PSA does not govern lawsuit proceeds, and that the Domestic Relations Code excludes payment for a cause of action that arose after the parties' separation. Appellant argues that the trial court, in concluding otherwise, modified the plain terms of the PSA.

Further, Appellant argues that the California Litigation resulted in a "global settlement" of outstanding matters between Appellant and his former writing partner. Appellant's Brief at 22. Appellant claims the Agreement and Release addressed his "right to be listed in the screenwriters' guild and receive residual payments from the OLYMPUS HAS FALLEN motion picture, his rights to the characters and story line. However, the settlement was not related to the mov[i]e script." Appellant's Brief at 22-23.

The record reveals that Appellant's former writing partner, Creighton Rothenberger, sold the Script on March 5, 2012. N.T. Trial, 3/30/17, at 86-88. Approximately one month prior to the sale, Rothenberger sued Appellant in California for copyright infringement related to the Script's story and characters. *Id.* Appellant filed a counterclaim against Rothenberger based on his contributions to the Script. *Id.* at 88. Appellant and Creighton signed the confidential Agreement and Release on July 3, 2013. *Id.* at 89. Pursuant to the Agreement and release, Appellant received $194,687.50. *Id.* at 55. Appellant explained his understanding of the settlement proceeds:

> My understanding is that I received cash payment of $175,000.[4] In exchange for that I agree to give up my rights to OLYMPUS HAS FALLEN.

*Id.* at 92. See page 95. Appellant testified that, as of 2003, he would receive half of the proceeds if he and Rothenberger sold the Script. *Id.* at 121. Appellant's share diminished after the partnership broke up and Rothenberger took over the development of the Script. *Id.* Appellant testified that the version of the Script Rothenberger sold in 2013 had been heavily revised after their partnership ended. *Id.* at 95. By the time of the Script's sale, Appellant's agreement with Rothenberger was that he would receive a fixed fee rather than a percentage of the sale proceeds. *Id.* at 122. Appellant testified that

---

[4] The trial court found that the remaining $19,687.50 in settlement proceeds compensated Appellant for other assets he once held jointly with his former writing partner. Trial Court Opinion, 8/1/17, at 3-4. The trial court found that Appellee was not entitled to half of that amount, and Appellee has not challenged that finding.

he offered Appellee a "gift" of $10,000.00 from the settlement proceeds. *Id.* at 145-46.

Upon review of the foregoing, we discern no error in the trial court's ruling. The trial court found that the Script was sold for $175,000.00. The record, indeed Appellant's trial testimony, confirms those facts. Subsequent to that sale, Appellant received a settlement pursuant to which he relinquished any rights to the movie produced from the Script. The PSA does not specify which party had to sell the script, nor does the PSA define proceeds. Applying the *Herskovitz* Court's definition of sale, as Appellant proposes, we have no trouble concluding that a sale occurred. *See Herskovitz*, 362 A.3d at 396. Specifically, Rothenberger transferred the Script to another party and received valuable recompense. Appellant does not dispute that Rothenberger received "proceeds," as that term is used in the PSA. According to his own testimony, Appellant had an agreement with Rothenberger whereby he was entitled to receive a portion of the sale proceeds. Had Rothenberger, upon his sale of the Script, immediately tendered a portion of the proceeds to Appellant, we do not see any basis upon which Appellant could have avoided paying Appellee her share pursuant to the PSA. Appellant invites us to conclude that Appellee's right to her share of the proceeds under the PSA depended on Rothenberger's voluntary compliance with that agreement. We decline to do so. That Appellant and Rothenberger proceeded to litigation does not change the fact that the Agreement and Release compensated Appellant for Rothenberger's sale of the Script. Furthermore, nothing in § 3501 of the Domestic Relations

Code forbade the parties to include proceeds from the Script in their PSA. Appellant cites no law for the proposition that § 3501 defeats a spouse's right to recover under a PSA where the other spouse must litigate to vindicate his right to money or property subject to the couple's PSA.

In summary, we conclude that the record supports the trial court's findings of fact, *i.e.*, that Appellant received proceeds from the sale of the Script. We further conclude that the trial court properly enforced the PSA according to its plain terms. We therefore affirm the trial court's order.

Order affirmed at Docket Number 1835 EDA 2017. Appeal quashed at Docket Number 2228 EDA 2017. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/18